**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ZAZA JILAVIANI,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**ERNESTO SANTACRUZ, JR., et al.,**<br><br>**Respondents.** | **NO. 5:26-cv-05998-KS**<br><br>**MEMORANDUM OPINION AND ORDER** |

Before the Court is the Petition for Writ of Habeas Corpus by a Person in Federal Custody ("Petition") filed by counsel for Petitioner Zaza Jilaviani ("Petitioner") on October 9, 2026. (Dkt. No. 1[1].) For the following reasons, the Petition is **GRANTED**.

## BACKGROUND

Petitioner is a citizen of Georgia. (Dkt. No. 1 ¶ 8.) He is currently detained at Desert View Facility in Adelanto, California. (*Id.*) On November 7, 2022, a Border Patrol agent encountered Petitioner near San Luis, Arizona. (*Id.* ¶ 11.) The same day, he was served a Notice to Appear (Form I-862), which charges him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)

[1] The Court's page citations refer to the page numbers provided by its CM-ECF docketing system that appear near the top right corner of each page.

and ordered him to appear before the Van Nuys Immigration Court. (*Id.* ¶¶ 11-12; *see* Dkt. No. 1-2 at 3 (alleging Petitioner is "a[] [noncitizen] present in the United States who has not been admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General").). Petitioner was then released into the United States and enrolled in Alternatives to Detention ("ATD") and was required to report to the Los Angeles U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") office. (Dkt. No. 1 ¶ 13; Dkt. No. 9-1 ("I-213") at 2.) On January 17, 2023, Petitioner filed Form I-589, Application for Asylum and Withholding of Removal, with United States Citizenship and Immigration Services ("USCIS"), which remains pending. (I-213 at 3.) On April 27, 2023, Los Angeles ERO terminated Petitioner from ATD and enrolled him in the Compliance Assistance Reporting Terminal ("CART") program. (*Id.*)

On July 13, 2026, local authorities arrested Petitioner for shoplifting under California Penal Code § 459.5(a), and as of the briefing, the disposition was still pending. (I-213 at 3.) Within hours of the arrest, local authorities released Petitioner. (Dkt. No. 10 ("Reply") at 2; *see also* Dkt. No. 10-2 (noting that Petitioner was released from the custody of local authorities seemingly on his "own recognizance").)

Prior to his reporting appointment, on July 13, 2026, the Los Angeles ICE ERO instructed Petitioner to appear with a Georgian travel document to a reporting appointment at an Intensive Supervision Appearance Program ("ISAP") office on July 29, 2026. (Dkt. No. 1 ¶ 14; I-213 at 3.)

On July 29, 2026, Petitioner appeared at his reporting appointment, during which ICE agents took Petitioner into custody. (*Id.* ¶¶ 14-15; I-213 at 2.) The I-213 explains that Petitioner was identified through a system search, which confirmed his shoplifting arrest. (I-213 at 2.) The I-213 further notes that Petitioner "was informed of his arrest and that the violation was subject to a custody redetermination." (*Id.*) Petitioner was also served with Form I-200, or an

administrative warrant. (I-213 at 2; *see* Dkt No. 9-2 ("I-200") at 1.) Petitioner "was cooperative during the encounter and arrest process" and "was arrested without incident and taken into custody." (I-213 at 2.) Petitioner alleges that he was not provided with any notice or an opportunity to be heard about his alleged violation prior to his re-detention on July 29, 2026. (Reply at 3.)

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under § 2241 for noncitizens subject to detention following an order of removal).

## DISCUSSION

The Petition asserts two claims for relief: (1) Petitioner's detention violates 8 U.S.C. § 1226(a) (Dkt. No. 1 ¶¶ 21-27) and (2) Petitioner's re-detention violates the Due Process Clause of the Fifth Amendment (*id.* ¶¶ 28-37). He maintains that release is the proper remedy for each of these claims. (*Id.* at 16.) Petitioner concurrently filed three exhibits: (1) Form I-862, Notice to Appear, dated November 7, 2022, issued to Petitioner (Exhibit A); (2) a screenshot of the ICE Online Detainee Locator, showing Petitioner's location as Desert View Facility

(Exhibit B); and (3) a screenshot of Petitioner's EOIR Automated Case Information, showing that Petitioner has no final removal order (Exhibit C).[2] (Dkt. No. 1-1.)

Respondents, in an opposition consisting of a single paragraph, do not oppose providing Petitioner with a bond hearing but oppose release because of Petitioner's "criminal history." (Dkt. No. 9 at 2.) Respondents assert, without citing any case law, that "[t]he petition does not allege an adequate basis to justify an order compelling release from detention" and that Petitioner's "recent arrest . . . constitutes a changed circumstance." (*Id.*) Respondents did not present opposition to Petitioner's detention under § 1226(a) or due process claims. Respondents concurrently filed two exhibits: (1) Form I-213, Record of Deportable/Inadmissible Alien, dated July 29, 2026, issued to Petitioner; and (2) Form I-200, Warrant for Arrest of Alien, dated July 29, 2026, issued to Petitioner. (Dkt. Nos. 9-1 to 9-2.)

In his Reply, Petitioner argues that release is the proper remedy because his arrest does not equate to an adjudication of risk of flight or dangerousness and his re-detention without advance notice or a neutral custody hearing violated due process. (Reply at 2-6.) Petitioner concurrently filed two exhibits: (1) pages from "Inmate Information," identifying Petitioner's arrest by the Los Angeles Police Department on July 13, 2026 at 10:50 a.m. and release at 6:11 p.m. that day seemingly on his "own recognizance" (Exhibit A) and (2) "Prisoner's Receipt," issued to Petitioner, with a "date arrested" for July 13, 2026, and identifying the "charge & code" as a misdemeanor for shoplifting under California Penal Code § 459.5(a) (Exhibit B).

\\

\\

\\

\\

[2] Since counsel for Petitioner has last filed the habeas petition, an individual hearing has been scheduled for Petitioner for November 23, 2026; however, Petitioner still has no final removal order. *See Automated Case Information*, U.S. Dep't of Just., https://acis.eoir.justice.gov/en/ (last visited Nov. 20, 2026).

**A. Procedural Due Process**

Petitioner contends that his re-detention violates due process. (Dkt. No. 1 ¶¶ 28-37.) Without providing any further information, Respondents' sole argument is that Petitioner's arrest "constitutes a changed circumstance." (Dkt. No. 9 at 2.)

The Fifth Amendment Due Process Clause provides that "no person shall be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. Thus, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted). "In the context of civil immigration detention, the two 'regulatory goals' of the Immigration and Nationality Act provisions governing such detention—'ensuring the appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the community'—can provide such 'special justification.'" *Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (quoting *Zadvydas*, 533 U.S. at 690).

"In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). When determining what procedures are required by due process, courts weigh the three factors outlined in *Mathews v. Elridge*, 424 U.S. 319, 335 (1976)—(1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest. At a

minimum, procedural due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Moreover, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

*1. Private Interest*

As to the first *Mathews* factor, Petitioner undoubtedly has a strong interest in remaining free from detention. After Petitioner entered the United States in November of 2022, Petitioner was enrolled in ATD or the CART program for about four years, without any issues. (Reply at 3; *see also* I-213 at 2 (noting only Petitioner's arrest for shoplifting as a "violation").) Petitioner gained a liberty interest when he was released on conditions. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Again, the Court notes that Respondents have not provided any argument disputing Petitioner's due process claim and only contest immediate release because of Petitioner's recent arrest. (Dkt. No. 9 at 2.)

Thus, the first *Mathews* factor weighs in Petitioner's favor.

*2. Risk of Erroneous Deprivation*

Turning to the second *Mathews* factor, the risk of erroneous deprivation of liberty is undoubtedly high where, as here, Petitioner was re-detained without any procedural safeguards

to determine whether his detention is justified. Respondents assert that Petitioner's arrest "constitutes a changed circumstance," (Dkt. No. 9 at 2), but do not contend how the arrest and detention comported with due process. "Even if the Government might believe it has a valid reason to detain petitioner, this does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Gregorio Ordoñez v. Bondi*, No. 2:25-CV-02356-JHC-TLF, 2025 WL 3852444, at *4 (W.D. Wash. Dec. 19, 2025), *report and recommendation adopted*, No. 2:25-CV-02356-JHC-TLF, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026); *Kelly v. Almodovar*, No. 25 CIV. 6448 (AT), 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (reviewing a RAP sheet, without more, is "not tantamount to an individualized assessment of a suspect's flight risk or dangerousness").

Here, the I-213 describes a scheduled call-in following a letter sent twelve days earlier, and Petitioner dutifully attended his appointment without incident. (Reply at 4; I-213 at 3.) Nothing in the record suggests the information provided in the letter gave Petitioner notice of the alleged violation prior to his scheduled reporting appointment. Petitioner concedes that "[a] new arrest may justify reassessment," but correctly points out that Respondents have failed to explain why reassessment could occur only *after* Petitioner's detention. (Reply at 4.) Indeed, local authorities seemingly made a determination that Petitioner did not present a flight risk or danger to the community when they released Petitioner on his own recognizance following his shoplifting arrest. (*Id.* at 2-3.) Moreover, the I-200 authorizing his re-arrest does not refer to the alleged shoplifting violation as the reason for his re-arrest. (Dkt. No. 9-2); *see, e.g.*, *Victoriano v. Mullin*, No. 2:26-CV-00886-RAJ, 2026 WL 1194596, at *6 (W.D. Wash. May 1, 2026) (listing cases where the court ordered immediate release when the arrest warrant did not mention the ATD violation). Given that ICE waited nearly two weeks to take enforcement action, "it entirely fails to show how Petitioner's circumstances constitute a special case that 'urgently require[s] arrest' such that providing notice and a pre-deprivation hearing would reasonably be considered 'impracticable.'" *Bravo-Zambrano v. Bondi*, No. C26-0167JLR,

2026 WL 879245, at *4 (W.D. Wash. Mar. 31, 2026) (quoting *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025)).

Thus, the second *Mathews* factor weighs in Petitioner's favor.

*3. Government Interest*

Finally, as to the third *Mathews* factor, "[t]he effort and cost required to provide Petitioner with procedural safeguards is minimal." *Doe v. Becerra*, 787 F. Supp. at 1094; *see Qian Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (finding "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government" to be minimal). Indeed, "the Government's interest in re-detaining non-citizens previously released without a hearing is low." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. "[A]lthough it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and [a] hearing on ATD violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *Id.* Thus, the Government's interest in re-detaining Petitioner without a hearing is low. *See Doe*, 787 F. Supp. 3d at 1094 ("The effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case.").

Thus, the third *Mathews* factor weighs in Petitioner's favor.

In sum, the *Mathews* factors show that Petitioner had a due process right to a pre-deprivation hearing before he was re-detained. Accordingly, the Court concludes that

Petitioner's re-detention violates his constitutional right to due process and that the Petition must be granted.[3]

## RELIEF

Having found that Petitioner was re-detained without adequate process, the Court must next determine the appropriate remedy. In his Petition, Petitioner requests immediate release under the same conditions governing Petitioner before his July 29, 2026 arrest, or, in the alternative, a bond hearing. (Dkt. No. 1 at 20; Reply at 5-6.) Although Respondents do not challenge Petitioner's entitlement to a bond hearing, they contend that Petitioner is not entitled to immediate release. (Dkt. No. 7 at 2.)

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); *see also Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022) ("Declaratory and injunctive relief are proper habeas remedies.").

"Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is unlawful from its inception and typically requires immediate release." *Victoriano*, 2026 WL 1194596, at *6, at *22 (citation modified). Moreover, "[b]ecause the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026). Thus, as several courts have determined,

[3] Petitioner also asserts that his re-detention violates 8 U.S.C. § 1226(a). (Dkt. No. 1 ¶¶ 21-27.) However, since this Court concludes that Petitioner is entitled to release on his due process claim, the Court finds it unnecessary and inexpedient to address the remaining claim. *Huynh v. Marin*, No. 5:26-CV-02405-SP, 2026 WL 1772734, at *3 (C.D. Cal. June 16, 2026). Petitioner may raise this claim again if he is subject to any future detention.

"a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

Accordingly, the Court concludes that the appropriate remedy for Petitioner's unlawful re-detention without adequate process is his immediate release. This is in accord with other courts in this district that have ordered Petitioner's release for a violation of procedural due process, even where Respondents argued that a recent arrest constituted a change in circumstances. *See, e.g.*, *Rosales-Zuniga v. Mullin*, No. 5:26-cv-05449-PD, 2026 WL 2947305, at *4-5 (C.D. Cal. Sept. 30, 2026) (ordering Petitioner's release because his re-detention after his release from the custody of the Office of Refugee Resettlement without a pre-deprivation hearing violated procedural due process and Respondents stated only "that his arrest constitutes changed circumstances" and "fail[ed] to engage with the facts of this case"); *Safarov v. Warden, Adelanto ICE Processing Ctr.*, No. 5:26-CV-02974-DTB, 2026 WL 1864864, at *2 n.3 & 4 (C.D. Cal. June 25, 2026) (ordering release where Petitioner was arrested for shoplifting but not subsequently charged, and thus was consequently "given little weight").

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

## ORDER

**IT IS ORDERED** that Respondents shall immediately release Petitioner Zaza Jilaviani (A-Number 243-157-303) from custody under the same conditions governing Petitioner before his July 29, 2026 arrest. Respondents shall file a notice within three (3) days of this Order confirming Petitioner's release. **IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner without notice and a meaningful opportunity to be heard before a neutral decisionmaker.[4] Judgment will be entered accordingly.

DATED: November 20, 2026

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

---

[4] Petitioner also requests an award of costs and attorney fees. (Dkt. No. 1 at 16.) Any request for costs and fees must be filed separately and in accordance with the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.